Robert J. DAVY et al., Plaintiffs,

v.

**L. B. SULLIVAN, Individually and as Commissioner of Corrections, et al., Defendants.**

Civ. A. No. 3754–N.

United States District Court,
M. D. Alabama, N. D.

Feb. 16, 1973.

Varner, District Judge, dissented in part and filed opinion.

Ralph I. Knowles, Jr., Knox Argo, Tuscaloosa, Ala., Howard Mandell, Montgomery, Ala., for plaintiffs.

Leslie Hall, Montgomery, Ala., for William Baxley.

Herbert H. Henry, Birmingham, Ala., for Sullivan, Thompson and Elliott.

Robert L. Humphries, Birmingham, Ala., for Adderholt and Morris.

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

## OPINION

PER CURIAM.

In this section 1983 action,[1] plaintiffs challenge the constitutionality of Ala-

---

[1]. 42 U.S.C. § 1983. *"Civil action for deprivation of rights*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Federal District Courts are granted jurisdiction over section 1983 claims by 28 U.S.C. § 1343(3):

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*　　\*　　\*　　\*　　\*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

bama's criminal sexual psychopath statute, Tit. 15, §§ 434–442 (Recomp.1958), as amended (1971 Supp.),[2] and seek a permanent injunction restraining defendants from enforcing that law on the ground of its unconstitutionality. The Chief Judge of this Circuit convened a three-judge court pursuant to 28 U.S.C. § 2281.

Alabama's criminal sexual psychopath law provides for commitment of those persons who suffer from a "mental disorder" and exhibit "criminal propensities to the commission of sex offenses" [Tit. 15, § 434]. The prosecutor may initiate commitment proceedings after the accused is "charged with" a sex offense or after the accused is convicted, but before he is sentenced [Tit. 15, § 436].[3] Commitment must be preceded by a psychiatric examination [Tit. 15, § 434] and a judicial hearing [Tit. 15, § 438]. After a determination that he is a sexual psychopath, the accused is committed to the control of the Director of the Department of Corrections [Tit. 15, § 438] for confinement in "Alabama state hospitals or other appropriate state institutions under the jurisdiction of the department of corrections" until he is "fully and permanently recovered" [Tit. 15, § 438].

Plaintiffs raise several serious constitutional objections to the Alabama statute on its face and as applied to them. They claim that:

1) The definition of a criminal psychopath contained in Tit. 15, § 434 is impermissibly vague—constituting a denial of due process.

2) The failure to define criminal psychopath in terms of dangerousness results in a denial of equal protection by creating an overly broad classification.

3) The release requirement of "full and permanent recovery" violates due process by creating an insurmountable barrier to freedom and denies plaintiffs equal protection, since the civil commitment standard of release is less stringent.

4) The interaction of the Act's several sections results in prison confinement without a trial—a clear violation of due process.

5) Alabama's failure to provide adequate and effective medical and mental health care violates due process.

Plaintiffs ask, not only for an injunction barring future commitments under the Act, but also for an order remanding each member of the class for trial or sentencing and requiring that defendants provide adequate care for those committed under the Act.

## JURISDICTION

Defendants precede their argument on the merits by questioning this Court's jurisdiction over plaintiffs' claims. Defendants first argue that the named plaintiffs did not exhaust their state remedies prior to initiation of this suit —implying that plaintiffs are circumventing proper procedures and court-shopping.

 Plaintiffs' motives for bringing this suit are immaterial; their claims

---

2. At least 26 states and the District of Columbia have enacted statutes dealing with the commitment of "psychopathic" sex offenders. The statutes vary, but each seeks to fulfill the twofold purpose of protecting society and rehabilitating the offender. Sexual psychopaths are considered neither normal, nor legally insane. See Swanson, Sexual Psychopath Statutes: Summary and Analysis, 51 J. Crim.L.C. & P.S. 215 (1960). See also Annot., 34 A.L.R.3d 652.

3. Of the 27 state psychopath statutes, 15 provide for initiation of proceedings after

conviction of a specific sex crime. Prior to 1961, Alabama's statute was in this category. Eight statutes (including Alabama's present statute) merely require that the alleged offender be charged with a sex crime, and the remaining five do not require a criminal charge, but simply demand that cause be shown that the person is probably a sexual psychopath. Four of the eight states requiring only a triggering criminal charge (including Alabama) retain a triggering provision upon conviction of specified crimes. See 51 J.Crim.L.C. & P.S. 215 (1960), *supra*.

are clearly cognizable in federal court. An action brought under section 1983 to remedy the deprivation of a constitutional right is an independent federal claim, not premised on exhaustion of state remedies. Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Carter v. Stanton, 1972, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569. Although the present case is cognizable in federal habeas corpus, as well as under section 1983, it may be brought under either theory. Wilwording v. Swenson, 1971, 404 U.S. 249, 92 S.Ct. 407, 30 L. Ed.2d 418. Even though plaintiffs seek an injunction here, the federal anti-injunction statute, 28 U.S.C. § 2283, is inapplicable.[4]

The defendants next argue that the issues raised in this case are foreclosed by virtue of Hamrick v. State, 281 Ala. 150, 199 So.2d 849 (1967), *appeal dismissed*, 389 U.S. 10, 88 S.Ct. 88, 19 L.Ed.2d 10 (1967). In *Hamrick* the Alabama Supreme Court ruled that the "hearing" required by Tit. 15, § 438 (to ascertain the accused's psychopathy) is "a judicial hearing surrounded by all the requirements of due process." No other provision of the Alabama psychopath statute was attacked by the prisoner in *Hamrick*, and the court's ruling was clearly restricted to the facial constitutionality of section 438.[5] The plaintiffs in this case raise significant constitutional objections to other sections of the Alabama Act. The United States Supreme Court's dismissal of Hamrick's appeal for want of a substantial federal question forecloses attack on section 438, but leaves open the issues raised here.

Finally, defendants argue that the principles of comity dictate federal abstention in this case. For reasons which are spelled out in the discussion of the merits of the case, abstention is not here proper.

## PROPRIETY OF A CLASS ACTION

■ The four named plaintiffs brought this action on behalf of that class of persons who have been committed to state institutions as criminal sexual psychopaths by the State of Alabama pursuant to Tit. 15, §§ 434–442, Ala. Code 1940 (Recomp.1958).

Defendants seek dismissal of the suit's class aspect, arguing that the class is too small to make joinder of all members impractical, and that too few questions of law or fact are common to each member of the class.

For reasons to appear subsequently, we hold that the named plaintiffs are proper representatives of their class and that this action can be maintained as a class action.

Ten individuals have been either committed under the contested Act since August 22, 1971, or remain confined today. Those individuals are now either incarcerated, in a mental hospital, or on probation. Of the four named plaintiffs, three (Robert Lewis Poore, Harold Tom Wilson, and Robert T. Davy) remain in the actual or constructive custody of defendants, while the fourth, Robert Lee Williams, has been declared a non-psychopath and discharged.

Title 15, § 441 provides that a person committed to an Alabama institution as a criminal sexual psychopath may be released on probation after a hearing establishing his "full recovery." According to the statute, the probationary period terminates after a "reasonable time." In practice, fully recovered psychopaths often remain on probation for many years. While on probation, each re-

---

4. Even if plaintiffs sought a stay of a state court proceeding in this case, their section 1983 claim would fit into the "express authorization" exception to section 2283. Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705.

5. Examination of the briefs filed with the Alabama Supreme Court reflects that only section 438 was challenged. A search of the reports indicates that *Hamrick* is the sole Alabama Supreme Court decision to construe any of the challenged Act's several sections.

leased psychopath is subject, at the initiating court's discretion, to sentencing for the triggering offense or return to the Director of the Department of Corrections for further treatment.

■ An indeterminable number of persons, who are on probation today, were committed under the Alabama psychopath act and released prior to August 22, 1971. Each of those unknown individuals are legitimate members of the class; their claims are not mooted. Humphrey v. Cady, 1972, 405 U.S. 504, 506–507, n. 2, 92 S.Ct. 1048, 31 L.Ed.2d 394. Thus, the class, which the named plaintiffs represent, includes, not only the ten individuals identified by defendant Sullivan, but also those persons committed and placed on probation prior to August, 1971.[6]

■ The numerosity requirement of Rule 23(a)(1), F.R.Civ.P., is an important consideration. Members of a small class should not be denied their day in court. See Rippey v. Denver U. S. National Bank, D.Colo.1966, 260 F. Supp. 704. Yet, other factors, including the nature of the cause of action and the location of the members of the class, bear on the propriety of a class action. Where the identity or location of many class members is unknown, and the total membership of the group is indeterminable at the time of the institution of the action, a class action is appropriate. Smith v. Swormstedt, 1853, 16 How. 288, 57 U.S. 288, 14 L.Ed. 942; Lansdale v. Tyler Junior College, E.D.Tex.1970, 318 F.Supp. 529, aff'd en banc, 470 F.2d 659 [5 Cir. 1972]. The facts in the instant case compel that procedure.

Allowing the class action is further warranted because, where plaintiffs seek not to collect monetary damages but to strike down a constitutionally offensive statute, the requested relief (if granted) will necessarily affect all persons subject to the statute—whether formally combined as a class or not. Recognizing this fact, the Fifth Circuit stated in a pre-1966 action to enjoin state segregation laws for common carriers that,

"We find it unnecessary to determine * * * whether this action was properly brought under Rule 23(a), for whether or not appellants may properly represent all Negroes similarly situated, the decree to which they are entitled is the same. * * * * The very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated."

Bailey v. Patterson, 5 Cir. 1963, 323 F. 2d 201, 206, cert. denied, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609. See also Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28. Thus, as a practical matter, it is immaterial that certain potential class members are satisfied with their present status and oppose the suit. If the statute is struck down, all those similarly situated will be equally affected. Excluding the hypothetical class members about whom our dissenting brother is worried would not realistically immunize them from any of the effects of our decree in this case. Sullivan v. Houston Independent School Dist., S.D.Tex.1969, 307 F.Supp. 1328; Fujishima v. Board of Education, 7 Cir. 1972, 460 F.2d 1355, 1360.

■ In determining whether the circumstances of any given case meet the requirements of Rule 23(a)(3) and (4), it must be kept in mind what the basic thrust of the action concerns. The basic thrust of this law suit concerns the constitutionality of Alabama criminal sexual psychopath statutes. There is not even a hypothetical class member who

---

6. The class which plaintiffs describe includes only those committed under the Act in the *past*. This class is, by itself, large enough to warrant maintenance of the suit under Rule 23. However, it might be noted in passing that the very nature of this type of suit contemplates a benefit for those similarly situated in the *future*, as well as the past. See Local 246, Utility Workers Union of America v. Southern California Edison Co., D.C.Calif.1969, 13 F.R.Serv.2d 23a.2, Case 1.

denies that the Alabama sexual psychopath laws are void. As stated in Wright & Miller, Federal Practice & Procedure: Civil § 1768, p. 639, " * * * only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Thus, assuming, as the dissent does, that there may be members of the class who would not benefit by the *effect* of a declaration of unconstitutionality of Alabama's criminal sexual psychopath laws, this is not determinative of the plaintiffs' representative status.

For purposes of determining the constitutionality of the statute, it is helpful for this Court to first attempt to characterize the proceedings and incarceration provided for by the statute. This is so because the constitutional standards to be applied to the statute will vary depending on whether the statute provides for a criminal proceeding in the nature of a sentencing alternative or, rather, for a separate, civil commitment proceeding.

Characterization depends, as an initial matter, on whether the statute is triggered by a criminal conviction or merely a criminal charge. Incarceration of one merely charged with a crime and the proceedings leading to such incarceration, clearly, if justified at all, must be justified on the basis of being a civil proceeding. Even if a person has been convicted of a crime, however, it does not necessarily follow that incarceration subsequent to such a conviction or the proceedings pursuant to which incarceration is imposed are intended to be criminal in nature. As the Supreme Court has pointed out, a statute which

imposes a disability may be considered to be nonpenal if the disability is designed not to punish but to accomplish other legitimate governmental purposes. Trop v. Dulles, 1958, 356 U.S. 86, 96, 78 S.Ct. 590, 2 L.Ed.2d 630. The character of incarceration imposed on an adjudged sexual psychopath subsequent to a criminal conviction depends, in part therefore, on whether incarceration under such a statute is to be served in lieu of a criminal sentence for the triggering conviction. If incarceration pursuant to a post-conviction proceeding is in lieu of a criminal sentence and is limited in duration to the maximum permissible sentence for that conviction,[7] then such incarceration is in the nature of a sentencing alternative and the proceeding pursuant to which such incarceration is imposed is a mere sentencing proceeding not requiring even those procedural safeguards that are afforded in a civil commitment. Humphrey v. Cady, 1972, 405 U.S. 504, 510–511, 92 S.Ct. 1048, 31 L.Ed.2d 394 (dictum). *Cf.* Williams v. New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. If incarceration is in lieu of a criminal sentence but could extend beyond the maximum imposable sentence for the triggering conviction,[8] then, while the incarceration is criminal incarceration which would bar an additional sentence for the triggering conviction, the proceeding pursuant to which that incarceration is imposed is a separate, criminal proceeding—in the nature of a proceeding under a habitual offender statute—requiring new findings of fact and thus entitling the convicted offender to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. Specht v.

7. Of the fifteen state statutes requiring a triggering conviction, five states limit the period of commitment to the actual sentence imposed at trial or to the maximum imposable sentence for the triggering conviction. *See* Appendix to Swanson, note 1 *supra*, at 228.

8. Of the ten states not limiting incarceration to the actual sentence imposed at trial or to the maximum imposable sentence for the triggering conviction, five

explicitly provide or imply that such incarceration is a defense to any further proceedings on the triggering conviction. Three of the four states requiring only a triggering criminal charge but specifically retaining a triggering provision upon conviction of specified crimes provide that incarceration under the statute is a defense to any further proceedings on a triggering conviction. Alabama's statute is the only one which does not.

Patterson, 1967, 386 U.S. 605, 609, 87 S.Ct. 1209, 18 L.Ed.2d 326, quoting United States ex rel. Gerchman v. Maroney, 3 Cir. 1966, 355 F.2d 302, 312.

Some sexual psychopath statutes under which convicted offenders are incarcerated, however, provide that incarceration under the statute is not in lieu of the sentence for the triggering offense, and that upon release from incarceration under the statute the person formerly adjudged a sexual psychopath is subject to further criminal proceedings on the triggering conviction.[9] While the Supreme Court has not considered this type of statute,[10] lower federal courts and state courts have upheld such statutes against claims that they constituted double jeopardy. *See, e. g.,* Cullins v. Crouse, 10 Cir. 1965, 348 F.2d 887. The commitment is said to be essentially civil in nature, while the double jeopardy clause is applicable only to successive criminal causes of action. Where, however, the provision for a sexual psychopath proceeding is contained in a state's criminal code, it has been held that such a proceeding subjected the prisoner to two trials and convictions for a single statutory crime, and, if not for a single offense, then in one instance for having a mental disorder characterized by sexual deviation, constituting a denial of due process. People v. Frontczak, 286 Mich. 51, 281 N.W. 534 (1938). In that instance, after the statute was rewritten and moved to the civil procedure portion of the code, the provision was upheld as constitutional. *See* People v. Chapman, 301 Mich. 584, 4 N.W.2d 18 (1942). We express no view as to the soundness of such a distinction since, in our opinion, it is not the label but the effect that is important.

For purposes of analysis, however, it is helpful to determine how the Alabama statute is to be classified. Certain aspects of the statute suggest that it is a criminal statute. It has been codified as a chapter in Alabama's criminal procedure, entitled "Criminal Sexual Psychopathic Persons." It defines a criminal sexual psychopathic person as one not so mentally ill as to make him criminally irresponsible for his acts, but suffering from a mental disorder which is coupled with criminal propensities to the commission of sex offenses. Proceedings under the statute are triggered by a criminal charge or conviction, and upon a finding that a person is a criminal sexual psychopath, he is committed to the director of the department of corrections and institutions. Even if such person is confined in a mental hospital, he may be administratively transferred into the prison system. Upon discharge, the person must be placed on probation for a reasonable time, and if the terms of probation are violated, he may either be recommitted or sentenced for the triggering conviction, if any.

Other aspects of Alabama's sexual psychopath statute, however, suggest that it is in the nature of a civil commitment proceeding. The statute may be triggered by a criminal charge as well as by a criminal conviction. Whether a person committed under the statute has been charged or convicted, his commitment rests solely upon a finding that he is a criminal sexual psychopath, which entails a finding not only that he has a criminal propensity to commit sex offenses, but also that he is suffering from a mental disorder. Finally, the standard of release from incarceration is full and permanent recovery from one's psychopathy.[11]

Characterized as criminal, the statute clearly cannot be said to provide a mere sentencing alternative. Commitment is

---

9. Five state statutes requiring a criminal conviction so provide.

10. The Court has considered the due process requirement for commitment under similar, "defective delinquent" statutes. *See, e. g.,* McNeil v. Director, Patuxent Institution, 1972, 407 U.S. 245, 92 S.Ct.

2083, 32 L.Ed.2d 719. *Cf.* Baxstrom v. Herold, 1966, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620.

11. The evidence reflects that rarely, if ever, would a competent psychiatrist make such a finding.

apparently not in lieu of sentence for a triggering conviction, and is not limited in duration to the maximum permissible sentence for the triggering conviction.

 Stripped of its characterization as a sentencing alternative, the statute, as a criminal statute imposing punishment on convicted sex offenders, suffers other constitutional infirmities as well. The most important infirmity is that such persons can be transferred to a penal institution on the theory that they are convicted offenders, can be incarcerated there indefinitely on the theory that they are not fully and permanently recovered from their psychopathy, and, even if released on parole, can, upon revocation of parole, be returned to prison —either directly by means of a prison sentence for the triggering conviction, or indirectly by means of recommitment and subsequent administrative transfer to the prison system. Thus, the Alabama sexual psychopath statute, as a post-conviction proceeding, allows for as drastic an increase in the period of incarceration as does the statute considered in Specht v. Patterson, *supra*, yet does not bar subsequent imposition of a sentence for the triggering conviction. We hold that, as a criminal statute imposing punishment on convicted sex offenders, Alabama's sexual psychopath statute is unconstitutional in that it either subjects a person to two criminal proceedings, and possibly to two criminal sentences, for a single statutory crime, or, if not for a single offense, then in one of the two proceedings for the mere crime of having a mental disorder. *See* People v. Frontczak, supra. *Cf.* Robinson v. California, 1962, 370 U. S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758.

Defendants would urge, however, that the statute be considered as a remedial and humanitarian measure. To the extent, of course, that the statute applies to persons merely charged with a crime, it must clearly appear that it is a remedial and humanitarian measure if it is to pass constitutional muster. In view of our holding that the statute is unconstitutional as a criminal statute, as

much is required in the case of a convicted sex offender who is committed under the statute. The remaining question for this Court, then, is the extent to which Alabama's sexual psychopath statute can be said to serve as a valid civil commitment statute.

The immediate problem with such a characterization of the statute is that at least one of the plaintiffs in this case is presently incarcerated, not in a treatment facility, but in one of the state prisons. The statute, moreover, gives authority to the superintendent of a state hospital to transfer an adjudged criminal sexual psychopath, whether convicted of a crime or not, from the hospital to the director of the department of corrections and institutions, when in the judgment of the superintendent such person cannot or will not benefit from treatment. The highest courts of two states have declared such a practice to be unconstitutional. In Commonwealth v. Page, 339 Mass. 313, 159 N.E.2d 82 (1959), the Supreme Judicial Court of Massachusetts held that for the Massachusetts sexual psychopath statute to be sustained as a nonpenal statute, the remedial aspects of the statute must have foundation in fact. It is not sufficient, the court held, that the legislature announce a remedial purpose if the consequences to the individual are penal. Similarly, in In re Maddox, 351 Mich. 358, 88 N.W.2d 470 (1958), where a person was committed as a criminal sexual psychopath and subsequently transferred to state prison for incarceration and restraint as medical treatment for "adamant criminal sexual psychopathy," by which was meant the refusal of the person to admit the triggering offense with which he was charged but never convicted, the Michigan Supreme Court held that the person could not be said to be receiving treatment "in an appropriate state institution" within the meaning of the statute, and his incarceration in state prison constituted a denial of his federal constitutional rights.

 Alabama's statute makes no pretense that transfer to the prison sys-

tem is for the purpose of treatment— nor could it in light of this Court's judgment in Newman v. Alabama, M.D. Ala.1972, 349 F.Supp. 278.. Neither is the language of Alabama's statute requiring confinement in "appropriate state institutions" capable of a limiting construction similar to that given by the Michigan court to the same language in that state's statute. The Alabama statute, as we have noted, goes on to provide for transfer from a state hospital to the director of corrections and institutions, and grants the superintendent of a state hospital the authority to make such a transfer when in his judgment an adjudged sexual psychopath cannot or will not benefit from further treatment. We hold that this provision of Alabama's sexual psychopath statute is unconstitutional on its face, constituting, as it does, a clear denial of due process.

Plaintiffs do not limit their constitutional challenge, however, to the transfer provisions of the statute. They also challenge the constitutionality of the statutory standards of commitment and release. Because the statutory provisions containing these standards have not been construed by the Alabama Supreme Court, we find it necessary to consider whether abstention on these issues is appropriate.

 The judge-made doctrine of abstention is only to be applied in special circumstances. Zwickler v. Koota, 1967, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444. One of these circumstances—indeed, the paradigm case for abstention—arises where a challenged state statute is susceptible of a construction by the state courts that would avoid the federal constitutional question. Lake Carriers' Ass'n v. MacMullan, 1972, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257; Harrison v. NAACP, 1959, 360 U.S. 167, 176, 79 S.Ct. 1025, 3 L.Ed.2d 1152. Nevertheless, the abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; rather, it involves a discretionary exercise of a court's equity powers. Baggett

v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377. If the Alabama statute in question is not fairly subject to an interpretation which will render unnecessary the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. Harman v. Forssenius, 1965, 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L. Ed.2d 50.

 As for the standard of release, we find that the statute clearly requires full and permanent recovery from one's psychopathy prior to release. Moreover, we find that this language is not fairly subject to a limiting interpretation which will render unnecessary the constitutional questions raised by the standard. In order to avoid these constitutional questions, the Supreme Court of Alabama would in effect be required to hold that full and permanent recovery does not mean full and permanent recovery at all. This is a far different task from that of merely defining with greater precision what is meant in the standard of commitment by such terms as "mental disorder" or "sex offenses." Rather, a judicial re-writing of the statute would be required. We cannot presume that the Supreme Court of Alabama would be willing to so encroach on the province of the State Legislature. Consequently, we find it inappropriate to abstain from considering the constitutionality of the statutory standard of release.

 The Supreme Court in Jackson v. Indiana, 1972, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435, held that the nature and duration of civil commitment must bear some reasonable relation to the purpose for which an individual is committed. Applying that holding to the present case, we conclude that, once it is determined that a person incarcerated under Alabama's sexual psychopath statute cannot or will not benefit from further treatment, his release from incarceration cannot constitutionally be conditioned on full and permanent recovery from his "psychopathy," unless continued incarceration for such a disorder

is justified upon a finding of dangerousness to self or others. We further note that treatment under the statute must meet the minimum requirements set forth in Wyatt v. Stickney, M.D.Ala. 1972, 344 F.Supp. 373, and that a finding of dangerousness upon termination of such treatment must be grounded upon the likelihood of conduct which has a serious effect on the person incarcerated or others, rather than being merely repulsive or repugnant. *Cf.* Millard v. Harris, 1968, 132 U.S.App.D.C. 146, 406 F.2d 964; Millard v. Cameron, 1966, 125 U.S.App.D.C. 383, 373 F.2d 468.

▋ In view of our holding on the standard of release, we find it unnecessary to consider plaintiffs' challenge to the standard of commitment. It may well be that the standard of commitment is either vague and indefinite or overbroad; as a practical matter, however, it would make little difference in the relief granted. Those plaintiffs presently incarcerated must in any event be released from incarceration pursuant to the statute herein found unconstitutional.[12] If incarceration under valid statute is continued for treatment purposes, it would have to be in a facility that provides treatment and not simply in a penal institution where treatment is not available. Wyatt v. Stickney, *supra,* and Newman v. Alabama, *supra.* We therefore decline to rule on the constitutionality of the standard of commitment. For the same reason we do not consider plaintiffs' other constitutional arguments. Pursuant to the foregoing opinion, a judgment and an order are entered.

VARNER, J., pursuant to separate opinion concurrently filed, concurs in part and dissents in part.

VARNER, District Judge (dissenting in part):

I respectfully dissent from that part of the opinion of my brothers allowing the class action aspects of this case and from that part of the order deciding that Plaintiffs are entitled to a fee for the services of their attorneys.

The writer is concerned that the circumstances of this case do not meet the requirements of Rule 23(a)(3) and (4) as follows:

"(3) [T]he claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class."

All members of the class will not necessarily be served by a declaration that their commitments under the Sexual Psychopath Law are void. A convict currently serving the end of his commitment, who may know that he will be released on probation in a very short time, and a subject now serving the latter part of his probation are members of the class seeking revocation of their commitments. These members of the class may prefer to complete the commitment or the probation now being served rather than to have the same set aside and face the possibility of another trial or sentence in their case. To force upon them the relief sought in the petition in this case may be a grave personal disservice, and it must be remembered that they have never received any service or official notice of the pendency of these proceedings.

The facts of this case distinguish it from cases such as Bailey v. Patterson, (5 Cir. 1963) 323 F.2d 201, 206, cert. den. 376 U.S. 910, 84 S.Ct. 666, 11 L. Ed.2d 609, wherein this matter has been treated in accordance with the majority view in this case in situations where members of a class seek to vindicate rights of the class such as the right of members of the black race to ride in any portion of theretofore segregated buses. Bailey v. Patterson, supra. The effect in *Bailey* was to add to the rights of ev-

---

12. This does not mean that the State of Alabama cannot and shall not take appropriate action under valid statutes to protect the public and any individual who may be found dangerous or who may benefit from further treatment.

ery member of the class and was, therefore, not subject to the argument that certain members of the class preferred not to exercise the right sought to be vindicated. The relief obtained in *Bailey* created an option open to each plaintiff, whereas the relief sought in the instant case effects a status forced upon each Plaintiff.

I am, therefore, of the firm opinion that the claims of the representative Plaintiffs are not shown to be typical of the claims of the class and that the representative Plaintiffs are not shown to be in a position to fairly and adequately protect the interests of all of the class.

My brothers of the majority have so framed their order that the probability of injustice therefrom is at a minimum. However, in my judgment the effect of the holding is to avail plaintiff-class status to persons possibly having adverse interest and to thereby deny class Plaintiffs of their day in court without notice. I, therefore, dissent.