COMMUNITY CREDIT CO., A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. JOE GILLHAM, DOING BUSINESS AS GILLHAM'S AUTO SALES, APPELLANT AND CROSS-APPELLEE.

214 N. W. 2d 384

Filed January 25, 1974. No. 39018.

Robert E. Paulick, for appellant.

Orval W. Von Seggern of Cunningham, Blackburn & Von Seggern, for appellee.

Heard before WHITE, C. J., McCOWN, and NEWTON, JJ., and LYNCH and WARREN, District Judges.

WARREN, District Judge.

This is a replevin action by plaintiff Community Credit Co., a Minnesota corporation, for the return of a 1971 Hornet automobile, or the value thereof, from the defendant Joe Gillham, doing business as Gillham's Auto Sales, of St. Paul, Nebraska. After two special findings by the jury, the court entered judgment for plaintiff for $1,700. Defendant has appealed and plaintiff has cross-appealed.

The evidence establishes that on April 15, 1971, Jean C. Grapentin, then residing in Hennepin County, Minnesota, purchased a new 1971 Hornet automobile from plaintiff's assignor under a conditional sales contract which was signed by her husband Stanley C. Grapentin as guarantor. Pursuant to that transaction plaintiff filed a financing statement on April 19, 1971, in the office of the register of deeds of Hennepin County, Minnesota. Before a recent enactment which became effective October 1, 1972, Minnesota was a nontitle state, and hence Mrs. Grapentin obtained only a registration card from the Minnesota Motor Vehicle Division. The Minnesota registration card did not provide a space for listing of liens and encumbrances. The payments on the conditional sales contract became 30 days past due in October

1971. In the first part of October 1971, Stanley C. Grapentin brought the automobile to Grand Island, Nebraska, where he stayed temporarily while frequenting used car lots with a view to trading off his wife's automobile for a different car. With his estranged wife in California, Stanley C. Grapentin, identifying himself as Jean C. Grapentin, endorsed the Minnesota registration card before a Grand Island notary public, then signed his wife's name to a Nebraska application for a certificate of title in the office of the county clerk of Hall County, and on November 12, 1971, obtained a "clear" Nebraska certificate of title in the name of Jean C. Grapentin showing no liens or encumbrances. He then again signed his wife's name to the assignment portion of the Nebraska title, before a St. Paul, Nebraska, notary public, and on November 15, 1971, sold the automobile to the defendant for a stated consideration of $2,285 which consisted of $900 cash and an older automobile. Plaintiff first learned that the automobile might be in Nebraska in late November or early December 1971, and inquired of the defendant as to the whereabouts of the automobile. Defendant had sold the Hornet automobile on December 3, 1971, to a man in Denver, Colorado, whom he could not name at the time of trial, for "$1900.00 and something," and defendant testified that he had made no record of the sale. The testimony of Stanley C. Grapentin was offered by deposition taken at the Nebraska Penal and Correctional Complex 2 weeks before the trial.

The question presented by this fact situation is whether defendant purchased the 1971 Hornet automobile subject to plaintiff's security interest.

The trial court submitted two issues to the jury: (1) Whether or not Stanley C. Grapentin had the automobile in Nebraska for more than 4 months; and (2) the value of the automobile on January 17, 1972. The jury returned special findings that Grapentin had the automobile

We have nonetheless examined the matter closely and have given somewhat broader scope to the assignment than its language literally requires.

We have first examined the assignment of error and the Act in the light of Baxstrom v. Herold, 383 U. S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620; Specht v. Patterson, 386 U. S. 605, 87 S. Ct. 1209, 18 L. Ed. 2d 326; and Humphrey v. Cady, 405 U. S. 504, 92 S. Ct. 1048, 31 L. Ed. 2d 394, in which cases the Supreme Court of the United States examined the constitutionality of the New York Corrections Law, the Colorado Sex Offender's Act, and the Wisconsin Sex Crimes Act, respectively. The Act of Nebraska was not adopted until after the decisions in the first two cited cases and seems to have been drawn with reference to the standards and criteria of those decisions.

The New York Corrections Law provided for the civil commitment of a person at the conclusion of a penal sentence if it was determined that the person was mentally ill and required treatment. In that case an equal protection attack was made on the statute because although other New York statutes gave the person civilly committed the right to a de novo review by a jury trial, the Corrections Law did not. The court found the statute deficient on equal protection grounds and declared it unconstitutional. It found the act deficient also in that the determination of whether to commit the defendant to a hospital maintained by the Department of Corrections or to a civil hospital was administratively determined. The Nebraska Act is not subject to these deficiencies. Here the defendant was entitled to a jury trial, if he wanted it, to determine whether he was a sexual sociopath. Thus he was afforded maximum protection even if we were to equate commitment as a sexual sociopath with that of commitment of a person mentally ill, which of course we do not. Under our Act the determination whether to commit to the Regional Cen-

ter or to the Penal and Correctional Complex is determined after all constitutional due process safeguards and is not made administratively as in the New York Corrections Law.

In Specht v. Patterson, *supra,* the Colorado Law was held deficient in respect to due process. The commitment under the Sex Offender's Act was an alternative, just as is in the case of the Nebraska Act, and was made after psychiatric examination and report to the court. There was no provision for a hearing. The court in Specht said: "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." As we have pointed out in the introduction of this opinion, our Act provides all these constitutional safeguards.

In Humphrey v. Cady, *supra,* the court concerned itself with both due process and equal protection considerations. That case involved a "renewal" commitment under the Wisconsin Sex Crimes Act. The initial commitment was for treatment for a period equal to the maximum for the conviction of the crime. At the end of the period the state could petition for a 5-year renewal of the commitment if treatment was still needed. If after notice and hearing the defendant was found to be still dangerous to the public, renewal could be allowed. In respect to the equal protection issue, the court said: ". . . it is proper to inquire what justification exists for depriving persons committed under the Sex Crimes Act of the jury determination afforded to persons committed under the Mental Health Act." The Supreme Court recognized that the initial commitment triggered by a criminal conviction might not require a jury trial in order to satisfy equal protection requirements, but doubted that this would be true on the renewal commitment. It remanded the case to the Wisconsin court for a consider-

ation of that issue, saying: "An alternative justification for the discrimination might be sought in some special characteristic of sex offenders, which may render a jury determination uniquely inappropriate or unnecessary. It appears, however, that the Mental Health Act and the Sex Crimes Act are not mutually exclusive; that 'aberrations' warranting commitment under the latter might also amount to 'mental illness' warranting commitment under the former. The equal protection claim would seem to be especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, merely by the arbitrary decision of the State to seek his commitment under one statute rather than the other."

As we have already noted there is no discrimination under our statute between persons committed under the Act and persons committed under statutes pertaining to the mentally ill. Under the Act greater protection is afforded rather than less because the defendant under the Act is entitled to a jury trial on the issue of whether or not he is a sexual sociopath. We consequently see nothing in Humphrey v. Cady, *supra*, which requires us to hold our statute unconstitutional.

We now turn to the cruel and unusual punishment claim as set forth in the brief of the defendant from which we quote: "The evidence at the hearing wherein Appellant was adjudged to be a sexual sociopath was conflicting in regard to whether Appellant could benefit by further treatment at the Lincoln Regional Center, or whether Appellant should be committed to the State Penal and Correctional Complex, wherein treatment could be administered under more closely controlled conditions. . . . While this court held (State v. Madary, 178 Neb. 383, 133 N. W. 2d 583) that sexual psycopath statutes, etc. are generally not criminal statutes, it would appear that incarceration in a penal and correctional complex, wherein one is separated from other inmates

and not afforded the full resources of a psychiatric institution, would be punishment of a criminal nature ....
Appellant is serving a potential life sentence under a statute, the inherent purpose of which is rehabilitative and curative treatment. Commitment to the Nebraska Penal and Correctional Complex for an indefinite time is an indeterminable sentence and not applicable under R. R. S., § 29-2620 (1943) and has been held not to apply as punishment for the crime of rape; Haswell v. State, 167 Neb. 169, 92 N. W. 2d 161 (1958) .... Appellant is left in a state of limbo not knowing when, if ever, he may be released, sentenced by the Trial Court, or rehabilitated."

We consider the above contentions in the light of Specht v. Patterson, *supra;* Jackson v. Indiana, 406 U. S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435; and Davy v. Sullivan, 354 F. Supp. 1320.

In Davy v. Sullivan, *supra,* the court considered the constitutionality of the Alabama sexual psychopath law and pointed out: "Commitment is apparently not in lieu of sentence for a triggering conviction, and is not limited in duration to the maximum permissible sentence for the triggering conviction." The statute was held unconstitutional.

The Nebraska Act provides, as we have noted, that if the defendant is determined to be a sexual sociopath and further determined that he cannot be benefited by treatment, he shall be committed to the Nebraska Penal and Correctional Complex for an indefinite period. § 29-2903 (3), R. S. Supp., 1972. The question of whether he remains a sexual sociopath is subject to review at yearly intervals either on motion of the defendant or on the court's own motion. § 29-2906 (2), R. S. Supp., 1972. This review under the provisions of the Act is subject to the same due process safeguards which pertain to the initial commitment. §§ 29-2906 (2) and 29-2902 (2) to (7), R. S. Supp., 1972. The Act therefore is not subject to the criticisms made by the court in Jackson v. Indiana,

*supra,* and Davy v. Sullivan, *supra,* in these respects. Continuing commitment under the Act depends upon a finding that the defendant is still a sexual sociopath, i. e., "disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others." § 29-2901 and 29-2906 (2), R. S. Supp., 1972.

The Act provides that if the defendant on one of these reviews is determined no longer to be a sexual sociopath the court may "sentence the defendant on the original sex offense or release the defendant on probation." § 29-2906 (3), R. S. Supp., 1972. This provision may, depending upon the construction placed thereon, run afoul of what we believe are valid criteria stated in Davy v. Sullivan, *supra;* Specht v. Patterson, *supra;* and implicit in Jackson v. Indiana, *supra,* upon which latter two cases the court in Davy v. Sullivan, *supra,* relied. The Act would apparently permit an indefinite commitment of a sexual sociopath and then upon recovery the imposition of the maximum sentence for the offense which triggered the commitment. This possibility is characterized in the cited case as subjecting the defendant to two criminal penalties for a single offense. We believe that the indefinite commitment authorized serves two functions. The first, the protection of society and the second, punishment. The commitment and the sentence must be reasonably related to those ends. We hold that when and if the defendant is found to be no longer a sexual sociopath any sentence which the court may impose for the original conviction may not exceed the maximum sentences for rape less any time the defendant has been committed under the present order for indefinite commitment. Stated in another way, we hold that under the Act a defendant may not be confined for a period longer than the longer of the following: (1) The period during which he remains a sexual sociopath, or (2) the maximum term or terms authorized for the crime of which he was convicted and which triggered the initial

indefinite commitment. As so construed the Act is constitutional.

AFFIRMED.

SMITH, J., not participating.