Thomas Paul BRADLEY,
et al., Plaintiffs,

v.

Lynn HARRELSON, et al., Defendants.

Civ. A. No. 92–A–070–N.

United States District Court,
M.D. Alabama, N.D.

Sept. 15, 1993.

William Monroe Dawson, Jr., and Gayle H. Gear, Birmingham, AL, for plaintiffs.

David B. Byrne, Jr., Julia Elizabeth Kellum; Alice Ann Boswell, Alabama Dept. of Corrections, Legal Div., Harry A. Lyles, Gen. Counsel, Alabama Dept. of Corrections, Legal Div.; and G.R. (Rick) Trawick, Dept. of Mental Health and Mental Retardation, Montgomery, AL, for defendants.

## *ORDER*

ALBRITTON, District Judge.

This case is before the Court on the Recommendation of the Magistrate Judge, together with Defendants' objections to the Recommendation and Plaintiffs' response.

■ Defendant objects to William Bradley as a representative of the class on the ground that he has not been declared the legal guardian of his inmate son, Thomas Paul Bradley, and has no standing. This objection is without merit. The Magistrate Judge has not recommended William Bradley as the class representative, but has recommended that Thomas Paul Bradley by his father and next friend, be certified as a class representative. An incompetent person clearly may sue by next friend without the necessity of appointment of a general guardian. Rule 17(c), *Fed.R.Civ.P.* The question then, is not whether the father, William Bradley, has standing to be certified as a class representative, but whether the inmate son, Thomas Paul Bradley, is an appropriate class representative. The Court agrees with the Recommendation of the Magistrate Judge that he is.

Defendant objects to the Recommendation on the ground that the Plaintiff has not amended his complaint to strike his claim for compensatory and punitive damages and for a jury trial. In his response to this objection, the Plaintiff unequivocally states that he withdraws his claim for compensatory and punitive damages and his demand for a jury trial. Accordingly, the Court will order such claims to be stricken.

Defendants further object to the Recommendation on the ground that the case of *Butler v. Hunt* is dispositive of the Plaintiff's claim in this case and bars certification. The Court agrees with the reasoning of the Magistrate Judge regarding this issue and finds this objection to be without merit.

For the reasons stated above, the Defendants' objections to the Recommendation of the Magistrate Judge are OVERRULED, the Recommendation of the Magistrate Judge entered on May 20, 1993, is ADOPTED by the Court, and it is hereby ORDERED as follows:

1. Plaintiffs' claim for compensatory and punitive damages and Plaintiffs' demand for a trial by jury are hereby STRICKEN.

2. The Plaintiffs' Motion for Class Certification is GRANTED, and the Court hereby certifies, pursuant to Rule 23(b)(2), a Plaintiff class consisting of all acutely and severely mentally ill inmates who are presently incarcerated at the Kilby Correctional Facility or who will be incarcerated there in the future, because the Alabama Department of Corrections or the prison health care provider has determined that they are in need of mental health treatment.

3. Thomas Paul Bradley, by his father and next friend, William H. Bradley, is certified and named as class representative.

4. This case is REMANDED to Magistrate Judge John L. Carroll for further proceedings.

## *RECOMMENDATION OF THE MAGISTRATE JUDGE*

CARROLL, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

The plaintiff, Thomas Paul Bradley, filed this action through his father and next friend, William Bradley against Lynn Harrelson, the Warden of the Kilby Correctional

Facility; Morris Thigpen, the then-Commissioner of the Alabama Department of Corrections (DOC); and Larry Stricklin, the Director of the Taylor Hardin Secure Medical Facility (Taylor Hardin). Taylor Hardin is a facility for evaluating and treating seriously mentally ill persons who are either awaiting trial or have been convicted. The plaintiff alleges that these defendants have violated his constitutional rights by failing to adequately treat his mental illness.[1] A subset of his claim is that the procedures for transferring inmates from Kilby to Taylor Hardin and the lack of bed space at Taylor Hardin contribute to the violation. This case is currently pending on a motion for class certification. The original motion for class certification sought certification of a class damages action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. On February 17, 1993, the plaintiff filed an amended motion for class certification indicating that only injunctive and declaratory relief would be sought on behalf of the class. The court construes the amended motion, therefore, to seek certification under Rule 23(b)(2) rather than 23(b)(3). A hearing has been held on the class certification motion and briefs have been filed.

## II. FACTUAL BACKGROUND

The plaintiff is an inmate in the Alabama prison system serving a sentence of life without parole. He is seriously mentally ill. While awaiting trial in Jefferson County on capital murder charges in 1988, he was committed to Taylor Hardin by the trial judge because of mental health problems he exhibited at that time.

On July 8, 1988, the plaintiff was convicted of the charge of capital murder. He was transferred to Kilby Correctional Facility soon thereafter. Prison records show that he has been at several prisons during his incarceration. Most of his time has been spent in segregation units or in the mental health unit at the Kilby Correctional Facility. On at least two occasions since his arrival at Kilby Correctional Facility, he has been sent to the Taylor Hardin Secure Medical Facility for treatment.

Inmates with mental health problems are first evaluated for those problems by prison personnel and medical staff employed by the contract prison health care provider. A course of treatment is then developed. If outpatient treatment is sufficient, then the inmate is treated on an outpatient basis. However, if the psychiatric disorder is "sufficiently disturbing to preclude their being treated on an outpatient basis," the inmate is transferred to Kilby for evaluation as a possible admission to the Kilby inpatient unit.[2] Unfortunately, the facilities at Kilby are not sufficient to care for the growing numbers of inmates in the Alabama prison system with serious mental illness. In a memorandum dated February 28, 1990, directed to Associate Commissioner Tom Allen, Merle Friessen, the Director of Treatment for the prison system noted:

> The physical facilities for Mental Health In–Patient Care at Kilby are totally inadequate and the space available for conducting psychological evaluations for the increasing number of inmates coming into the facility is fast becoming marginal. Additionally, there is a lack of facilities for conducting group treatments either by the DOC staff or the Mental Health Contractor.

If an inmate is admitted to inpatient care and the inpatient care does not progress satisfactorily, the department may petition the Probate Court to have the inmate committed to the Department of Mental Health. Under the provisions of DOC Regulation 603, however, before a commitment petition may be filed, an elaborate system of procedural safeguards must be followed. Under the terms of the regulation, "inmates whose condition or behavior" warrants possible transfer to the state Department of Mental Health are referred to the Director of Mental Health at Kilby for the convening of a Sanity Commission to hold a hearing to determine whether the inmate should be transferred.

---

1. The plaintiff has filed this action under 42 U.S.C. §§ 1983 and 2000e.

2. This process is described in documents provided to the plaintiff by the DOC. Those documents are part of the record in this case.

The Sanity Commission is composed of the inmate's psychiatrist or attending physician, the medical contractor psychologist or institutional psychologist where the inmate is assigned, and a registered nurse or licensed practical nurse from the medical staff. If the Sanity Commission recommends transfer to a state mental hospital, the legal staff of the DOC prepares and files the commitment papers. If the Sanity Commission does not recommend transfer, "a detailed plan of treatment" is developed.

Because of the language of ALA.CODE § 22–52–70, an order from the governor is required before an inmate is actually transferred to the state mental hospital. Thus, once the probate judge issues his commitment order, the DOC seeks an order from the governor to transfer the inmate.[3] Unfortunately, even if the governor acts on the DOC request in a timely fashion, the inmate is not immediately removed from the prison system and placed at Taylor Hardin. There are significant delays in the system from the time the governor issues his order to the time that the inmate is actually admitted to the secure medical facility.[4] In 1988, there were 20 inmates transferred to the state mental hospital. There was an average delay from the date of the governor's order to actual admission to the hospital of 23 days. In 1989, 26 inmates were transferred and the average delay was 53 days. In 1990, 26 inmates were also transferred and the average delay was 103 days. The number of inmates transferred in 1991 rose to 30 and the delay decreased to 50 days. As of August 1992, 21 inmates had been transferred to the state mental hospital with an average delay of 22 days.

These delays were the subject of a letter dated April 2, 1991 from the then-Commissioner Thigpen to the then-Commissioner of the Alabama Department of Mental Health, J. Michael Horsley. Thigpen wrote:

The attached correspondence lists sixteen inmates who have been approved for transfer to Taylor Hardin Secure Medical, some of whom have been waiting since September 1990. The problem of growing numbers of inmates awaiting transfer and long waiting times could become an increasingly serious management problem for us during the next 6–9 months as we anticipate a change in medical contractors during the fall of 1991; and there is always the possibility that the level of care which we are able to provide may be somewhat impaired during such a transition.

### III. DISCUSSION

#### A. RULE 23(a)

■ Rule 23(a) of the Federal Rules of Civil Procedure specifies the four prerequisites to maintaining a suit as a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all only if the (1) class is so numerous that joinder of all the members is impracticable, (2) that there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

The burden is on the plaintiff who seeks certification of the class to establish these prerequisites.

#### B. NUMEROSITY—RULE 23(a)(1)

Under the policy of the DOC, the most seriously mentally ill inmates are initially placed at or transferred to the Kilby Correctional Facility for inpatient treatment. Those who are so acutely ill that treatment in the mental health system rather than Kilby is necessary are transferred to Taylor Hardin if there is room. The plaintiff has alleged that there is not always room at Taylor

---

**3.** The governor's order simply directs that the inmate be committed to an "Alabama State Hospital operated by the State Board of Mental Health until such time as the authorities of such hospital shall certify that he is able to return to prison." The effect of that order is to direct that the inmate be taken to the Taylor Hardin Secure Medical Facility.

**4.** The figures which follow are taken from data provided under court order from the Alabama Department of Mental Health.

Hardin for all the inmates who should be transferred there.

■ A party seeking to have a class action certified must show that the members of the class are so numerous that joinder is impracticable.[5] In assessing impracticability, "courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system." *See* 1 Herbert B. Newberg, *Newberg On Class Actions* § 3.03 (2d Ed. 1985) (hereinafter *Newberg* ). This common-sense approach has led courts to certify classes in cases such as the one *sub judice* which involve issues of common concern to inmates even when the potential class size is small and somewhat undefined. *See, e.g., Pabon v. McIntosh*, 546 F.Supp. 1328 (E.D.Pa.1982) (Class of 30–40 inmates); *Davy v. Sullivan*, 354 F.Supp. 1320 (M.D.Ala.1973) (Class of 10 inmates). *See generally Newberg* § 25.04.

As previously noted, this case involves prison inmates who have a serious mental illness. From January 15, 1990 to January 15, 1992, at least 100 of those seriously mentally ill inmates were transferred from various prisons across the state to the Kilby Mental Health Unit for inpatient treatment. During that same period of time, some 56 seriously mentally ill inmates were sent from Kilby to Taylor Hardin. Indeed, the data provided by the Department of Mental Health shows that an average of 25 inmates a year are transferred from the state prison system to the state mental health system out of a prison population of approximately 18,-000.[6] The court is convinced, given the numbers referenced above and the fact that the class is composed of seriously mentally ill persons, that the class which the plaintiff proposes is too numerous to join. The plaintiff has satisfied the requirements of Rule 23(a)(1).

## C. COMMONALITY AND TYPICALITY—RULE 23(a)(2) & (a)(3)

■ Rule 23(a)(2) requires that there be questions of law or fact common to members of the class. Rule 23(a)(3) requires that the plaintiffs claims be typical of the claims of those of the class. In practice, the requirements of commonality and typicality tend to merge. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); *Wynn v. Dixieland Food Stores, Inc.*, 125 F.R.D. 696,700 (M.D.Ala.1989).

In this case, the commonality and typicality requirements are clearly met. The plaintiff, through his complaint, has launched a systemic attack on the way that mental health care is provided to acutely and seriously mentally ill inmates in the Alabama prison system. His personal claims, that he was denied appropriate treatment and that his placement in Taylor Hardin was delayed, are similar to the claims which he seeks to raise on behalf of the class. Though there certainly may be some factual differences between the individual class members and the nature and severity of their illness, such individual differences do not defeat certification because there is no requirement that every class member be affected by the institutional practice or condition in the same way. *See, e.g., Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985) (typicality not defeated by the varying fact patterns and varying degrees of injury underlying each class); *Johnson v. American Credit Co. of Ga.*, 581 F.2d 526 (5th Cir.1978) (It is not necessary that all questions of law or fact raised in the litigation be common. Rather there need only be a single issue common to the members of the class.) In the words of a commentator

[T]he fact that class members ... may suffer varying degrees of injury ... will not bar a class action ... The emphasis of the rule is on situations that call for unitary adjudication to protect the rights of class members or those of the party opposing the class, to provide a forum when the individual litigation would be impractical, and to achieve judicial economy. The key

---

5. Impracticable does not mean impossible. *See generally* 1 Herbert B. Newberg, *Newberg on Class Actions* § 3.04 (2d Ed.1985).

6. This population figure was provided to the court by the Alabama Department of Corrections and represents the present prison population.

to these objectives is the resolution of common issues in a single proceeding, which will minimize the expenditure of judicial resources and result in a single resolution of common issues binding on all class members.

*Newburg* § 3.12.

The plaintiff's complaint raises a series of serious issues concerning the delivery of mental health services to acutely and seriously mentally ill inmates. The most efficient way for the court and the parties to resolve those issues is through a class action. The plaintiff has satisfied the commonality and typicality requirement of Rule 23(a)(2) and (a)(3).

### D. ADEQUACY OF REPRESENTATION—RULE 23(a)(4)

■ In determining whether the "representative parties will fairly and adequately protect the interest of the class," Fed. R.Civ.P. 23(a)(4), the court must inquire into the adequacy of the representative and the adequacy of counsel. *Jordan v. Swindall,* 105 F.R.D. 45, 48 (M.D.Ala.1985); 3B James W. Moore & John E. Kennedy, *Moore's Federal Practice* ¶ 23–07[1] at 23–187. In this case, the actual class representative is William Bradley, the father of the mentally ill inmate Thomas Paul Bradley whose claims are being presented to the court. Mr. Bradley has filed this action as the "next friend" of his son. There is no question that the claims which he raises on behalf of his son are sufficiently intertwined with the those of other class members. In addition, it is clear from the record before the court that Mr. Bradley is interested in this litigation and will do all that he can to see that it is brought to a successful conclusion on behalf of his son and the class he seeks to represent. In addition, counsel who represent the plaintiff are qualified and experienced and the legal representation which they have provided up to this point is adequate. The requirements of Rule 23(a)(4) are satisfied.

### E. RELIEF APPROPRIATE TO THE CLASS AS A WHOLE—RULE 23(b)(2)

■ Before a class can be certified under Rule 23(b)(2), the court must satisfy itself that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." This subsection is particularly applicable to suits such as the one *sub judice* which involve conditions of confinement in a correctional institution. *See Newberg* § 25.-18. Here the plaintiff challenges deficiencies in the system for delivering mental health care which affect the entire class. Certification under Rule 23(b)(2) is appropriate.

### F. THE RES JUDICATA ISSUE

■ Former Commissioner of Corrections Morris Thigpen and the warden at Kilby argue that the certification of the class in *Butler v. Hunt,* CA 87–A–58–N (M.D.Ala.), precludes certification in this case. The *Butler* case is a case challenging the conditions of confinement in certain areas at the Kilby Correctional Facility. On November 20, 1992, a class was certified under Rule 23(b)(2) in that case consisting of "all inmates who have been confined to the Kilby Segregation unit (A, B, C or D blocks), the P–1 unit, or the East and West Ward isolation cells, at any time since August 20, 1986 or who may be confined there in the future." The order certifying the class specifically referenced this action, however. As the court noted:

> That, notwithstanding that members of the class as defined above may be acutely or severely mentally ill, as to members of the class, resolution of this case shall not encompass any issue raised in *Bradley v. Harrelson,* 92–A–0070–N, concerning the adequacy of mental health treatment of inmates in Kilby Correctional Facility or procedures for identification, commitment and transfer of such inmates to the Alabama Department of Mental Health's Taylor–Hardin Security Medical Facility for treatment.

Thus, the existence of the *Butler* class is no bar to the certification of a class action in this case.

## IV. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge:

(1) That the Motion for Expedited Class Certification filed on March 6, 1992, as amended on February 17, 1993, be GRANTED;

(2) That a plaintiff class be certified as consisting of all acutely and severely mentally ill inmates who are presently incarcerated at the Kilby Correctional Facility or who will be incarcerated there in the future because the Alabama Department of Corrections or the prison health care provider has determined that they are in need of mental health treatment; and

(3) That Thomas Paul Bradley, by his father and next friend William Bradley, be named as the class representative.

DONE this 20th day of May, 1993.

### *ORDER*

The clerk of the court is ORDERED to file the Recommendation of the Magistrate Judge and to serve by mail a copy thereof on the parties to this action. The parties are DIRECTED to file any objections to the said Recommendation within a period of thirteen (13) days from the date of mailing to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981, *en banc* ), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.