**D.W., a minor, by his next friend, M.J., on behalf of D.W. and all others similarly situated, Plaintiff,**

v.

**R. Emmett POUNDSTONE, III, in his official capacity as Commissioner of the Alabama Department of Mental Health and Mental Retardation, Defendant.**

**Civil A. No. 95–A–771–N.**

United States District Court, M.D. Alabama, Northern Division.

March 29, 1996.

ted to DMH/MR, claiming that all such persons have been or will be denied services, treatment and care. The Defendant opposes the Plaintiff's Motion to Certify a Class. On September 26, 1995, the Defendant filed a Motion for Summary Judgment. He claims that he is entitled to judgment as a matter of law because the Plaintiff lacks standing to bring this action and because there are no material facts at issue in the case, and he is entitled to judgment as a matter of law.

For the reasons discussed below, the Plaintiff's Motion to Certify a Class is due to be GRANTED, and the Defendant's Motion for Summary Judgment is due to be GRANTED.

Robert Dean Drummon, Edwin L. Yates, Montgomery, AL, for plaintiff.

G.R. Trawick, Montgomery, AL, for defendant.

### MEMORANDUM OPINION

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is before the court on the Plaintiff's Motion for Class Certification and the Defendant's Motion for Summary Judgment. Jurisdiction is predicated upon 28 U.S.C. § 1331.

The Plaintiff, D.W., a minor, by his next friend, M.J.,[1] brought this action, pursuant to 42 U.S.C. § 1983, on behalf of himself and all others similarly situated against the Commissioner of the Alabama Department of Mental Health and Mental Retardation ("DMH/MR"). The Plaintiff claims that, after he was committed to DMH/MR, the Defendant failed to provide mental health services, treatment and care to him in violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The Plaintiff seeks to certify a class of all adolescents who have been or will be commit-

## II. FACTS

Essentially, this suit challenges the constitutionality of the Alabama Department of Mental Health and Mental Retardation's practices relating to the involuntary commitment of children who suffer from mental illnesses. Due to limited resources, it is common practice for DMH/MR to place a child who has been ordered committed on a waiting list until space becomes available in an appropriate state facility. As a result, DMH/MR often refrains from taking physical custody of a child at the time commitment is ordered, leaving the child with the parents or in private placement during the interim. The Plaintiff challenges this practice, arguing that it violates both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

### A. The Plaintiff's Case

The Plaintiff, D.W., is a seventeen year old boy who, until June 13, 1995, resided with his mother, M.J., in Montgomery County, Alabama. He has a history of mental illness. On two previous occasions, he was admitted by his mother to Charter Woods Hospital in Dothan, Alabama for treatment.

On April 12, 1995, the Plaintiff's mother filed a petition in the Circuit Court of Montgomery County, Alabama, seeking commitment of the Plaintiff to DMH/MR. On May

1. This court granted the Plaintiff and his mother permission to proceed under fictitious names to protect their privacy.

12, 1995, the Juvenile Division of the Circuit Court held a hearing on the commitment petition. After considering the testimony of the Plaintiff and his mother and after considering the records of Charter Woods Hospital, the court concluded that the child was suffering from a form of schizophrenia with negative prognostic features. The court further concluded that, based on recent overt acts, the child posed a threat to himself and others and that placement in a secure treatment environment appeared to be the least restrictive environment appropriate for the child until his condition improved.

Accordingly, the Circuit Judge entered an order committing the Plaintiff to the Alabama Department of Mental Health and Mental Retardation. *In re Matter of D.W.*, No. JU–92–111.14 (Ala. 15th Cir. May 12, 1995). The order further stated that, pending physical placement with DMH/MR, "the minor child may continue to reside with his mother," and it directed that DMH/MR "shall immediately notify this Court of the anticipated date of receipt of the physical custody of the minor child." *Id.*

Prior to the commitment order, DMH/MR had notified the Circuit Court that, should D.W. be committed, he would be treated at Bryce Hospital in Tuscaloosa, Alabama. DMH/MR also notified the court that D.W. could not be admitted immediately because adequate facilities were not available and his admission would result in overcrowding. As a result, D.W. was placed on a waiting list for Bryce Hospital.

After May 12, 1995, D.W. continued to manifest the same behavior which gave rise to the commitment order, including threatening the lives of his mother, grandfather, brother and five-year old sister. Those acts escalated until D.W. was admitted by his mother to Jackson Hospital, a private hospital in Montgomery County, Alabama where Medicaid covered the cost of his treatment and care. On June 13, 1995, a placement became available for D.W. at Bryce Hospital, and he was admitted.

### B. *The Plaintiff's Claims*

On June 7, 1995, the Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, against the Defendant, R. Emmett Poundstone, III, in his official capacity as Commissioner of the Alabama Department of Mental Health and Mental Retardation. At the time, the Plaintiff was a resident at Jackson Hospital and had not yet been admitted to Bryce Hospital. Initially, he sought a preliminary injunction directing the Defendant to provide services, treatment and care to him. He argued that the Defendant was violating his rights under both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment by failing to provide services, treatment and care to him after his commitment order was entered. The Plaintiff claimed that the Defendant's conduct caused him to suffer emotionally, physically, psychologically and behaviorally and left him without custodial protection and without any certainty as to when the Defendant would decide to fulfill his mandated responsibilities. The Motion for a Preliminary Injunction was withdrawn on June 13, 1995 after D.W. was admitted to Bryce Hospital.

Despite his admission to Bryce Hospital, the Plaintiff persists in this action. He seeks both a declaration that the practices of DMH/MR are unconstitutional and a permanent injunction directing the Defendant to provide services, treatment and care to every child committed to the DMH/MR from the time their commitment orders are entered. He endeavors to proceed as the representative of a class of "all adolescent youth who have been or will be committed to the Alabama Department of Mental Health and Mental Retardation." He argues that, while awaiting placement, all such adolescents have been, or will be, deprived of services, treatment and care in violation of the United States Constitution.

First, the Plaintiff argues that the practices of DMH/MR violate the Due Process Clause of the Fourteenth Amendment. He bases this claim on his contention that all persons possess a substantive due process right to services, treatment and care once they are ordered committed to DMH/MR. He argues that the Defendant's practices deprive children of that right.

Second, the Plaintiff argues that the Defendant's practices violate the Equal Protec-

tion Clause of the Fourteenth Amendment because children over twelve years of age are treated differently than adults. He contends that, unlike children over twelve, adults are regularly admitted by DMH/MR to mental health facilities within twenty-four hours of the entry of their commitment orders. To support this contention, he submits the deposition of Charles Fetner, Associate Commissioner of DMH/MR, who stated that it is the general practice of DMH/MR to admit adults within twenty-four hours of their commitment orders. In contrast, he also submits DMH/MR admission records that confirm that children are frequently required to wait several days or even weeks for admission to DMH/MR facilities. The Plaintiff attributes this inconsistent treatment to the Defendant's failure to maintain adequate facilities for children. To support this argument, he points out that the DMH/MR maintains over fourteen hundred beds for adults but only one hundred for juveniles—forty at Bryce Hospital and sixty at Eufaula Adolescent Center.

Finally, the Plaintiff argues that the Defendant's practices violate the Equal Protection Clause of the Fourteenth Amendment because children over twelve years of age are treated differently than younger children. He contends that DMH/MR regularly contracts with private services providers to ensure that children twelve and under receive prompt services, but will not do the same for children over twelve.

### C. *The Defendant's Response*

In response to the Plaintiff's claims, the Defendant has moved for summary judgment on alternative grounds. First, the Defendant argues that the Plaintiff lacks standing to bring this action because his request for an injunction and declaratory relief became moot when he was admitted to Bryce Hospital.

Second, the Defendant argues that, as a matter of law, the practices of DMH/MR do not violate the Due Process Clause of the Fourteenth Amendment. Although he admits that involuntarily committed mental health patients possess a substantive due process right to treatment, he argues that the right does not attach until DMH/MR takes physical custody of the patient.

Finally, the Defendant argues that, as a matter of law, the practices of DMH/MR do not violate the Equal Protection Clause of the Fourteenth Amendment. He asserts that DMH/MR does not always treat adults within twenty-four hours as the Plaintiff contends, but often places them on waiting lists as it does with children. Furthermore, although he admits that DMH/MR usually contracts with private service providers to care for children twelve and under and does not do so for older children, the Defendant argues that there is a logical reason for this. He claims that DMH/MR has made a clinical determination that it is inappropriate to treat children twelve and under in institutional facilities due to their greater vulnerability and that this reasoning justifies the disparate treatment of children over twelve years old. Accordingly, he argues that the procedures of the DMH/MR do not violate equal protection and that summary judgment is warranted.

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which

it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *STANDING*

■ The Defendant argues that the Plaintiff, as a matter of law, lacks standing to bring this action. Because standing is a constitutional prerequisite to maintaining an action in federal court, this court addresses the standing question prior to considering class certification.

■ It is a fundamental constitutional principle that the jurisdiction of the federal courts extends only to distinct "cases" and "controversies." U.S. Const. Art. III., § 2. Accordingly, federal courts lack jurisdiction over cases in which the issues presented are moot. *See Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969). Mootness has two varieties: "when issues presented are no longer 'live' or [when] the parties lack a legally cognizable interest in the outcome." *Id.* Here, it is clear that the issues presented are still "live" between the DMH/MR and at least some of the members of the class that the Plaintiff

seeks to represent because there is almost always a waiting list for admission of children over twelve years of age to a state mental facility. Furthermore, it is clear that the DMH/MR has an ongoing legally cognizable interest in the outcome of the litigation. This court, however, must address the Plaintiff's "personal stake" in the outcome of the litigation.

■ In some cases, the absence of a legally cognizable interest in the plaintiff does not render the action moot. *See, e.g., Sosna v. Iowa,* 419 U.S. 393, 400–02, 95 S.Ct. 553, 557–59, 42 L.Ed.2d 532 (1975) (holding that mootness of named plaintiff's individual claim after class certification does not render action moot). In fact, in certain situations a named plaintiff may litigate a class certification issue despite termination of the plaintiff's personal claim. *See, e.g., United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 1212–13, 63 L.Ed.2d 479 (1980) (noting the "flexible character of the Art. III mootness doctrine" and holding that a named plaintiff may litigate class certification even after expiration of his personal claim); *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975) (assuming that personal claims were rendered moot before class certification and permitting named plaintiffs to persist in litigating merits of case).

In *Gerstein,* the named Plaintiffs brought an action challenging the conditions of pretrial detention in the State of Florida. When considering the named Plaintiffs' standing to maintain the suit, the Supreme Court noted that the Plaintiffs were no longer in pretrial detention and assumed that they were not in detention at the time the trial court certified the class. Nevertheless, the court held that the case was not moot because the short and indefinite term of the detention made it uncertain that any individual would ever be detained long enough for the district court to certify a class. *Id.; see also Geraghty,* 445 U.S. at 398–99, 100 S.Ct. at 1209–10 (explaining *Gerstein* ). The court also noted that "the constant existence of a class of persons suffering the deprivation" at issue made it certain that there would continue to be persons with a live interest in the case. *Ger-*

*stein,* 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11. Accordingly, notwithstanding the mootness of the named Plaintiff's claims prior to certification, the court validated the class and allowed the named Plaintiffs to litigate the merits of the case. *Id.*

■ Similarly, the case under consideration by this court "belongs ... to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Id.* Like *Geraghty,* the fact that the Plaintiff's claims were mooted before this court could certify a class does not preclude the Plaintiff from litigating the issue of class certification. *Id.* Here, it is not certain that any given child over twelve will remain on a waiting list long enough for the district court to certify a class. The length of time that each child must wait before gaining admission to a state facility cannot be determined from the outset of the case and the waiting period for any child may be terminated at any time by admission to a state mental facility. Moreover, the almost constant existence of a class of children over twelve years of age awaiting admission to a state mental facility will ensure that the claims in this case are litigated zealously. Consequently, this court holds that the Plaintiff in this case has standing to litigate the issue of class certification and, upon certification, has standing to litigate the merits of the case.

## V. *CLASS CERTIFICATION*

■ The Plaintiff seeks to certify a class of "all adolescent youth who have been or will be committed to the Alabama Department of Mental Health and Mental Retardation." Due to the issues presented by the Plaintiff in this case, the court concludes that a more accurate definition of the class is "all minors over the age of twelve years old who have been or will be ordered committed to the custody of the Alabama Department of Mental Health and Mental Retardation and who are or will be placed on a waiting list for admission to a DMH/MR facility."

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for certifying and maintaining a class action. The rule provides in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

Fed.R.Civ.P. 23. Thus, to maintain a suit as a class action, the Plaintiff must show that the four prerequisites of Rule 23(a) have been met and that the provisions of one of the subdivisions of Rule 23(b) apply. *See Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 721 n. 2 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). In this case, the Plaintiff contends that subdivision (2) of Rule 23(b) applies.

■ The burden of establishing the specific prerequisites to a Rule 23 action falls on the party seeking to certify the class. *Gilchrist v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984); *Bradley v. Harrelson,* 151 F.R.D. 422, 425 (M.D.Ala.1993). In determining whether the named Plaintiff has met his burden, the court's inquiry is limited only to whether the requirements of Rule 23 have been satisfied. Therefore, the court shall not consider the merits of the plaintiffs' claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Kirkpatrick,* 827 F.2d at 722; *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). This principle, however, should not be invoked so rigidly as to limit artificially a trial court's examination of the factors

necessary to make a reasoned determination of whether Rule 23 has been satisfied. *Love,* 733 F.2d at 1564. Accordingly, a court may look beyond the pleadings in determining whether a motion for class certification should be granted. *General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Kirkpatrick,* 827 F.2d at 722.[2]

## A. *Numerosity.*

 A party seeking to have a class action certified must show that the members of the class are so numerous that joinder is impracticable.[3] In assessing impracticability, the court should exercise common sense and give due consideration to concerns of judicial economy and access to the legal system. *See Bradley v. Harrelson,* 151 F.R.D. 422, 426 (M.D.Ala.1993).

 In this case, the named Plaintiff has demonstrated that the members of the class are so numerous as to render joinder impracticable. The Plaintiff has presented evidence that 180 to 210 children a year are admitted to DMH/MR facilities for mental health treatment. According to the Plaintiff's evidence, a substantial number of those children are required to wait several days or even weeks for admission. As a result, this court concludes that the class at issue in this case is too numerous to join.

## B. *Commonality and Typicality*

 A party seeking to have a class action certified must show that there are questions of law or fact common to members of the class and that the named party's claims are typical of the claims of those of the class. In practice, the requirements of commonality and typicality tend to merge. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370; *Bradley,* 151 F.R.D. at 426.

In this case, the commonality requirement has clearly been met. The Plaintiff, through his complaint, has launched a systematic attack on the standard admissions procedure of the Alabama DMH/MR for children who are committed due to mental illness. He implores the court to recognize a right to treatment for children upon the signing of a state commitment order, and he seeks to stop the alleged disparate treatment of children over the age of twelve years old. These claims raise questions of law common to the proposed class.

Additionally, the named Plaintiff himself was denied services by the Alabama DMH/MR after the state court had entered an order committing him to the Department. After the order was entered, DMH/MR notified the Plaintiff that he would not be admitted until adequate space was available. As a result, the requirement of typicality has been met.

## C. *Adequacy of Representation*

 A party seeking to have a class action certified must demonstrate that he will fairly and adequately protect the interests of the class. In making this determination, the court must assess both the adequacy of the proposed representative and the adequacy of counsel. *Bradley,* 151 F.R.D. at 427.

 In this case, the named Plaintiff and proposed class representative is D.W. who is represented by his mother, M.J., as his next friend. Although D.W. is no longer subject to the denial of services that formed the basis for his claims, the court concludes that he has demonstrated that he will adequately protect the interests of the class. This conclusion is based on the unique circumstances of this case which render virtually impossible the complete adjudication of these important constitutional claims under a named plaintiff with a "live" interest. In other words, the court can conceive of no better plaintiff than

---

**2.** "Determination of the question of whether a lawsuit may proceed as a class action is committed to the sound discretion of the district court, and its determination will not be overturned absent a showing that it has abused its discretion." *In re Dennis Greenman Sec. Litig.,* 829 F.2d 1539, 1543–44 (11th Cir.1987); *see also Califano v. Yamasaki,* 442 U.S. 682, 703, 99 S.Ct. 2545,

2558–59, 61 L.Ed.2d 176 (1979) (district courts have broad discretion concerning issues of class certification).

**3.** Impracticable does not mean impossible. *See* Herbert B. Newberg, Newberg on Class Actions § 3.04 (2d ed. 1985).

D.W. to adjudicate these critical issues. In addition, counsel for the Plaintiff are qualified and experienced litigators and the legal representation they have provided thus far has been excellent. The court knows Plaintiffs' counsel to have handled numerous class actions in federal court and to have special expertise in the field of mental health. Furthermore, the Plaintiff has presented evidence demonstrating the almost constant existence of a class of persons suffering the denial of services at issue. As a result, the court believes that there will continue to be persons with "live" interests in the case whom counsel will, in effect, represent. *See, e.g., Gerstein,* 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11. Therefore, this court concludes that the requirement of adequate representation has been met.

### D. *Type of Class Action*

■ A party seeking to have a class action certified must show that the case fits into one of the categories contemplated by Rule 23(b). In this case, the Plaintiff contends that subdivision (2) of Rule 23(b) applies. Under rule 23(b)(2), an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23.

This case fits very neatly into the requirements of subdivision (2). Here, the Defendant has refused to provide services to children immediately upon entry of their commitment orders when there is a lack of available facilities. The Plaintiff, in response, seeks a declaration that the Defendant's actions are unconstitutional and an injunction ordering the Defendant to provide such services. Should the facts and law so authorize, injunctive and declaratory relief would be appropriate here. Therefore, class certification under Rule 23(b)(2) is due to be GRANTED.

Having determined that this case should proceed as a class action, the court now proceeds to consider the merits of the Plaintiffs' claims as they pertain to the certified class.

### VI. *THE SUBSTANTIVE CLAIMS*

The Plaintiff claims that the practices of the Alabama Department of Mental Health and Mental Retardation violate both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

### A. *Substantive Due Process*

The Plaintiff's due process claim is based upon his contention that civilly committed children possess a substantive due process right to receive services, treatment and care from their states. He argues that the right attaches at the time the state court enters a commitment order and that the Defendant regularly violates this right by denying services to children after their commitment orders have been entered.

■ At the outset, it is important to note that the Constitution generally does not require the States to provide substantive services to residents. *See, e.g., Harris v. McRae,* 448 U.S. 297, 318, 100 S.Ct. 2671, 2688–89, 65 L.Ed.2d 784 (1980) (publicly funded abortions); *Maher v. Roe,* 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977) (medical treatment); *Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972) (adequate housing). The Supreme Court, however, has recognized that an affirmative right to services does exist in certain situations. *See, e.g., Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (mentally retarded persons committed to state custody have a substantive due process right to a minimum standard of care); *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976) (incarcerated prisoners have an Eighth Amendment right to adequate medical care).

In *Wyatt v. Stickney,* this court first recognized that a substantive due process right to treatment exists for mental health patients involuntarily committed to state custody. *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala. 1971), *aff'd sub nom Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974). Chief Judge Frank M. Johnson wrote that "[w]hen patients are

... committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition." *Id.* at 784. He reasoned that "[t]o deprive any citizen of his or her liberty upon the altruistic theory that the confinement is for humane therapeutic reasons and than fail to provide adequate treatment violates the very fundamentals of due process." *Id.* at 785. Judge Johnson concluded that "absent treatment, the hospital would be transformed 'into a penitentiary where one could be held indefinitely for no convicted offense.'" *Id.* at 784 (quoting *Ragsdale v. Overholser,* 281 F.2d 943, 950 (D.C.Cir.1960)).

The existence of the right to treatment was subsequently confirmed by the Fifth Circuit in *Donaldson v. O'Connor,* 493 F.2d 507 (5th Cir.1974), and *Wyatt v. Aderholt,* 503 F.2d 1305 (5th Cir.1974).[4] In both cases, the Circuit Court held that to deny treatment to an individual who has been involuntarily civilly committed due to mental illness violates the Due Process Clause. *Donaldson,* 493 F.2d at 522–24; *Aderholt,* 503 F.2d at 1312. In *Aderholt,* the Circuit Court explained that the "[o]nly permissible justifications for civil commitment, and for the massive abridgments of constitutionally protected liberties it entails, [are] the danger posed by the individual committed to himself or others, or the individual's need for treatment or care." *Aderholt,* 503 F.2d at 1312. The court reasoned that, where public safety is the justification for commitment, the Due Process Clause requires the government to provide rehabilitative treatment to compensate the committed individual for suffering the deprivation of

liberty. *Id.* at 1312; *Donaldson,* 493 F.2d at 521. The court further reasoned that, where treatment itself is the justification for commitment, the Due Process Clause requires that the treatment in fact be provided. *Aderholt,* 503 F.2d at 1312; *Donaldson,* 493 F.2d at 521.

In this case, the parties agree that a child who is involuntarily civilly committed due to mental illness possesses a right to treatment. They disagree, however, as to when during the commitment process that right attaches.[5] The Plaintiff argues that the constitutional right to treatment is triggered when the state court enters a commitment order, transferring custody of the child to the state. The Defendant argues that the right is not triggered until the state takes actual physical custody of the child.[6]

■ As stated previously, the United States Constitution does not require states to provide mental health treatment to their citizens simply on the basis of need. The right to treatment exists to justify and compensate for the "massive abridgments of constitutionally protected liberties" that result from involuntary civil commitment. *Aderholt,* 503 F.2d at 1311. Although the entry of a commitment order by the state is not without significance, the "massive abridgments" of liberty that give rise to the right to treatment accompany the physical confinement of the committed individual, not the entry of the commitment order. When a committed mental patient is admitted to a state institution, as is generally the case, the patient's physical liberty is seriously restricted. As a result, the patient is subjected to the whim of the

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5. The parties in this dispute disagree as to when the Plaintiff was in fact committed to the Department of Mental Health and Mental Retardation. Under the Alabama Code, the act of commitment consists of the transfer of legal and physical custody. *See, e.g.,* Code of Ala. § 12–15–1(6) (defining "commit" as "transfer legal and physical custody."). The Plaintiff claims that both legal and physical custody were transferred to DMH/MR by operation of law at the time the

state court entered the commitment order. The Defendant claims that the transfer of both legal and physical custody did not occur until the Plaintiff was admitted to Bryce Hospital. This court declines to address this complicated question of state law and concerns itself solely with the question of what state action triggers the substantive due process right to treatment.

6. This issue was not raised in *Stickney, Donaldson* or *Aderholt* because the Plaintiffs in those cases were under commitment orders and in the physical custody of DMH/MR. Consequently, this case presents a question of first impression for this court.

State, and his ability to obtain mental health treatment from outside service providers is limited. *See Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976) (using similar reasoning to explain prisoners' Eighth Amendment right to adequate medical care). Abridgments of this magnitude do not result solely from the entry of a commitment order.

■■■ Consequently, this court must conclude that the right to treatment for children who are involuntarily civilly committed is triggered by the deprivation of physical liberty that generally results from commitment, not from the entry of a commitment order alone. This court declines to extend the right to treatment to mental patients who are under commitment orders but are not physically confined by the state. To do so would require the state to expand its mental health facilities or expend public funds to obtain services from private sources. While this might be a very laudable thing for the state to do for its young citizens, that is a matter for the state to decide. It is not required to do so by any due process requirements of the federal Constitution. As is frequently stated, the federal judiciary is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068–69, 117 L.Ed.2d 261 (1992). This court shares such reluctance.

Accordingly, the Defendant did not violate the Plaintiff's substantive due process right to treatment by failing to treat him immediately after the state court entered his commitment order, but before he was physically confined, and this court must GRANT summary judgment to the Defendant on the Plaintiffs' due process claim.

## B. *Equal Protection*

The Plaintiff contends that DMH/MR's regular practice of placing mentally ill children over twelve years old on a waiting list for admission to state institutional facilities violates the Equal Protection Clause of the Fourteenth Amendment.

### 1. **Disparate Treatment**

■■■ "A preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment." *Rodriguez v. Lamer,* 60 F.3d 745, 749 (11th Cir.1995) (quoting *Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983)). In this case, the Plaintiff alleges that the class he represents has been subjected to disparate treatment by DMH/MR in two ways.

First, the Plaintiff argues that children over twelve years of age are often forced to wait days or weeks after the entry of their commitment orders for admission to DMH/MR mental health facilities, while adults are regularly admitted to DMH/MR facilities within twenty-four hours. In support of this assertion, the Plaintiff has submitted the deposition of Charles Fetner, Associate Commissioner of DMH/MR, who stated that it was the general practice of DMH/MR to admit adults within twenty-four hours of their commitment orders. Additionally, the Plaintiff has submitted DMH/MR admission records that confirm that children are frequently required to wait several days or even weeks for admission to DMH/MR facilities.

In response, the Defendant denies that adults are regularly admitted to DMH/MR facilities within twenty-four hours of the entry of their commitment orders. Rather, he claims that adults, like children, are frequently placed on waiting lists. For the purposes of summary judgment, however, this court must view the evidence in a light most favorable to the Plaintiff. Therefore, this court must conclude that the Plaintiff has sufficiently demonstrated that children over twelve years old are subject to disparate treatment by DMH/MR when compared with adults.

Second, the Plaintiff argues that DMH/MR generally contracts with private community-based service providers to treat mentally ill children who are twelve years old and under, but it refuses to do so for older children, electing instead to treating them in institutional facilities. In response, the Defendant admits that these allegations of disparate treatment are true, but claims that such

treatment is justified. Accordingly, however, this court must conclude that the Plaintiff has established that children over twelve years old are subjected to disparate treatment by DMH/MR when compared with children twelve and under.

## 2. State Action

 The next issue that a court must address, when considering an equal protection claim, is the question of state action. The Equal Protection Clause is designed to protect the rights of citizens against infringement by the state or one acting under color of its authority. *U.S. v. Guest*, 383 U.S. 745, 755, 86 S.Ct. 1170, 1176–77, 16 L.Ed.2d 239 (1966). Accordingly, it is a fundamental principle of constitutional law that the prohibitions of the clause apply only to those actions which can be attributed to a state. *See Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) ("[T]he action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States."). In this case, the Defendant concedes that the practice of requiring children over twelve years of age to wait for admission to DMH/MR mental health facilities is fairly attributable to the State of Alabama.[7] Accordingly, state action has been established.

## 3. Level of Scrutiny

 Where state action is present, a court must determine, as the next part of its equal protection analysis, the proper level of scrutiny to be applied to the action. The court must apply heightened scrutiny if the state action infringes upon a fundamental right or discriminates based on a suspect classification, such as race. *See, e.g., Price v. Tanner*, 855 F.2d 820, 832 (11th Cir.1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989); *Melton v. Gunter*, 773 F.2d 1548, 1550–51 (11th Cir.1985). The finding of a fundamental right requires an assessment of "whether there is a right ... explicitly or implicitly guaranteed by the Constitution." *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973).

 In this case, there is no allegation that age is a suspect classification. In fact, disparate treatment based on age has generally been held to a rational basis test. *Gregory v. Ashcroft*, 501 U.S. 452, 469–70, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991). Moreover, it is clear that there is no right to mental health treatment explicitly guaranteed by the Constitution. Although there is such a right implicit in the Due Process Clause of the Fourteenth Amendment, in cases of persons involuntarily confined by a state, it is not implicated here.[8] Consequently, the practices in question are subject to rational basis scrutiny—they are valid if "the classification rationally furthers a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Generally, discriminatory state action which is held to rational basis scrutiny does not violate the Equal Protection Clause " 'if any state of facts reasonably may be conceived to

---

7. From the facts of this case, it is not entirely clear which branch or branches of the government of the State of Alabama are responsible for the actions challenged by the Plaintiff. Although the Plaintiff challenges the practices of the Alabama Department of Mental Health and Mental Retardation, a state executive agency, it is apparent that these practices were ordered, or at least authorized, by the state court. *See In re Matter of D.W.*, No. JU–92–111.14 (Ala. 15th Cir. May 12, 1995) (ordering commitment of the Plaintiff to DMH/MR but, pending placement, allowing the child to continue to reside with his mother). This, in turn, raises the question of whether the action taken by the state court was authorized by the state legislature under the juvenile commitment statute. *See* Ala.Code § 12–15–90(d)(3) (outlining procedures for commitment of a child to a DMH/MR facility but stating that "[n]o person shall be accepted if the facility does not have adequate facilities available or if acceptance would result in an overcrowded condition."). These are delicate and complicated questions of state law that this court need not decide because the Fourteenth Amendment "makes void 'state action of every kind' which is inconsistent with the guarantees therein contained, and extends to manifestations of 'state authority in the shape of laws, customs, or judicial or executive proceedings.' " *Shelley v. Kraemer*, 334 U.S. 1, 14, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) (quoting *The Civil Rights Cases*, 109 U.S. 3, 11, 17, 3 S.Ct. 18, 25–26, 27 L.Ed. 835 (1883)). Therefore, the court will consider the challenged action, without regard to responsibility for the action.

8. See *supra* Section VI.A.

justify [the classification].'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) (quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)).

■ In this case, the disparate treatment of children over twelve years old by DMH/MR can be justified. Although children who have been adjudicated mentally ill certainly pose a critical problem, adults often have more immediate needs for state services because they do not have the same support structures that most children have. Children generally have parents or guardians to ensure that they receive a minimum level of care; adults often do not. In some cases, if an adult is not admitted to a state facility immediately after commitment is ordered, he may be completely without care of any kind during the waiting period. Consequently, given the limited resources available to treat the mentally ill in Alabama, it not unreasonable for DMH/MR to expect a child's parents or guardian to care for the child during the waiting period. In those cases where a child's needs demand prompt attention, the state court has the authority to order the immediate placement of the child in a private facility, pending admission to a DMH/MR facility, and to order the county government to pay for the child's care. *See Ex parte Dep't of Mental Health,* 511 So.2d 181 (Ala. 1987).

The availability to many children of alternative sources of support is evident in the Plaintiff's case. After the Plaintiff's commitment order was entered, he was returned to the physical custody and care of his mother. The state court was aware of this arrangement—the order stated that, pending admission to a state facility, "the minor child may continue to reside with his mother." Had the state court determined that the Plaintiff was in need of immediate care, it could have placed the child in a private facility, but it did not do so. Based on these facts, this court must conclude that there is a rationale basis for DMH/MR to treat children over twelve years old differently from adults, if indeed such disparate treatment does occur. Accordingly, the Defendant's Motion for Summary Judgment must be GRANTED on this aspect of Plaintiffs' equal protection challenge.

■ Finally, the disparate treatment by DMH/MR of children over twelve years old compared to children twelve and under also can be justified. As the Defendant has explained, DMH/MR contracts with private, community-based service providers to care for the younger children because DMH/MR clinicians and professional consultants have determined that it is inappropriate to treat such children in institutional facilities. Implicit in this rationale is DMH/MR's conclusion that institutional care does not pose the same problems for older children. This court concludes that the Defendant's explanation establishes a rational basis for DMH/MR's failure to contract with private, community-based service providers to care for children over twelve years of age. Accordingly, the Defendant's Motion for Summary Judgment must be GRANTED on this aspect of the equal protection claim.

## VII. CONCLUSION

■ In conclusion, this court emphasizes that it has not decided that the practices of the Alabama Department of Mental Health and Mental Retardation are wise or that they are valid under state law. *See Dandridge,* 397 U.S. at 487, 90 S.Ct. at 1162–63. In this case, the Plaintiff has argued that DMH/MR's practice of placing mentally ill children over twelve years of age on a waiting list for admission to DMH/MR facilities when adequate space is not available violates the United States Constitution. Underlying his argument is the Plaintiff's conviction that DMH/MR does not provide adequate care or maintain adequate facilities for these children. This court, however, does not address the merits of the Plaintiff's conviction, but merely concludes that the challenged practices do not violate the United States Constitution. Because "the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy," this court defers to the wisdom of those state officials who are much better equipped to make policy decisions regarding the provision of services to the mentally ill and who are

charged with the responsibility of doing so. *Id.* at 486, 90 S.Ct. at 1162.

What this court does specifically hold and declare is that the United States Constitution does not require the State of Alabama to provide mental health treatment to minors over twelve years of age between the time of the signing of a commitment order by a state court and the time the minor is taken into physical custody in a state institution.

For the reasons discussed above, this court finds that the Plaintiff's Motion to Certify a Class is due to be GRANTED, and the Defendant's Motion for Summary Judgment is due to be GRANTED. A separate order and judgment will be entered in accordance with this memorandum opinion.

## ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered in this case on this day, it is hereby ORDERED as follows:

1. Pursuant to Rule 23(b)(2), *Fed.R.Civ. P.*, this action is certified to be maintained as a class action on behalf of the following class of plaintiffs:

All minors over the age of 12 years old who have been or will be ordered committed to the custody of the Alabama Department of Mental Health and Mental Retardation and who are or will be placed on a waiting list for admission to a Department of Mental Health and Mental Retardation facility

with respect to the following cause of action:

The claim for declaratory relief declaring the practice of placing minors over 12 years of age on a waiting list between the time a commitment order is entered by an Alabama state court ordering that the child be placed in the custody of the Alabama Department of Mental Health and Mental Retardation and the time such minor is placed in physical custody in a state facility to be violative of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, and for injunctive relief requiring that such minors be provided with mental health treatment at state expense immediately upon the entry of a commitment order by the state court.

2. Defendant's Motion for Summary Judgment is GRANTED, and judgment is hereby entered in favor of the Defendant against the Plaintiff, D.W., and all persons in the described class.