United States Court of Appeals,

Eleventh Circuit.

No. 96-6400.

D.W., a minor, by his next friend, M.J., on Behalf of D.W. and all others similarly situated, Plaintiff-Appellant,

v.

Virginia A. ROGERS, in her official capacity as the Commissioner of the Alabama Department of Mental Health and Retardation, Defendant-Appellee.

June 2, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-95-A-771-N), W. Harold Albritton, III, Judge.

Before BIRCH and DUBINA, Circuit Judges, and RAFEEDIE[*], Senior District Judge.

DUBINA, Circuit Judge:

Plaintiff/Appellant D.W.[1] appeals the district court's grant of summary judgment in favor of Defendant Virginia A. Rogers, Commissioner of the Alabama Department of Mental Health and Mental Retardation ("DMH/MR"),[2] in this class action challenging the constitutionality of the DMH/MR's practices relating to the provision of care and treatment for children over the age of twelve who are involuntarily civilly committed to the DMH/MR on account of mental illness. For the reasons that follow, we affirm.

I. Background

D.W. is a 17-year-old minor with a history of mental illness. On April 12, 1995, D.W.'s mother, M.J., filed a petition in the Juvenile Court of Montgomery County for involuntary civil commitment of D.W. to the DMH/MR. The DMH/MR notified the juvenile court that the appropriate state psychiatric facility, Bryce Hospital, lacked the resources to admit D.W.

---

[*]Honorable Edward Rafeedie, Senior U.S. District Judge for the Central District of California, sitting by designation.

[1]D.W.'s mother, M.J., brought this action as next friend on his behalf.

[2]Virginia A. Rogers became Commissioner of the DMH/MR during the course of this appeal and, by operation of law, is substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

immediately if he were committed. The DMH/MR indicated that it would place D.W. on a waiting list for Bryce Hospital if the juvenile court judge ordered him committed. After conducting a hearing, the juvenile court judge concluded that D.W. suffered from schizophrenia, that he posed a threat to himself and to others, and that he should be placed in a secure treatment environment until his condition improved. Accordingly, on May 12, 1995, the juvenile court judge entered an order committing D.W. to the DMH/MR. The order provided that, pending physical placement with the DMH/MR, D.W. could continue to reside with his mother. D.W. was placed on a waiting list for admission to Bryce Hospital; meanwhile, he lived at home with his mother. D.W. continued to exhibit dangerous behavior at home, including threatening the lives of his mother, grandfather, brother, and five-year-old sister. In light of this behavior pattern, D.W.'s mother admitted him to a private hospital, where Medicaid paid the cost of his treatment and care. Finally, on June 13, 1995, D.W. was admitted to Bryce Hospital.

Because the DMH/MR maintains a limited number of state hospital beds for juveniles, minors like D.W. who have been ordered committed frequently experience delays in receiving care and treatment. As the district court found:

> [d]ue to limited resources, it is common practice for DMH/MR to place a child who has been ordered committed on a waiting list until space becomes available in an appropriate state facility. As a result, DMH/MR often refrains from taking physical custody of a child at the time commitment is ordered, leaving the child with the parents or in private placement during the interim.

*D.W. v. Poundstone,* 165 F.R.D. 661, 665 (M.D.Ala.1996). D.W. argues that adults and children under twelve rarely are placed on waiting lists. The DMH/MR maintains more than 1,400 beds statewide for adults and, according to D.W., customarily admits adults to mental health facilities within 24 hours of the entry of a commitment order. For children under twelve who are ordered committed, D.W. claims that the DMH/MR regularly contracts with private mental health facilities to ensure prompt provision of treatment.

D.W. filed suit under 42 U.S.C. § 1983 against the Commissioner of the DMH/MR ("the Commissioner"). D.W. alleges that the DMH/MR's practice of waitlisting children over twelve violates their substantive due process rights to services, treatment, and care once a juvenile court

judge has ordered them committed to the DMH/MR. D.W. also alleges that the DMH/MR violates the Equal Protection Clause by treating differently children over twelve who have been ordered committed from mentally ill adults or children under twelve who need state care. Pursuant to Fed.R.Civ.P. 23(b)(2), the district court certified a plaintiff class of

> [a]ll minors over the age of twelve years old who have been or will be ordered committed to the custody of the Alabama Department of Mental Health and Mental Retardation and who are or will be placed on a waiting list for admission to a Department of Mental Health and Mental Retardation facility.

*Poundstone,* 165 F.R.D. at 676.[3] The district court then granted summary judgment in favor of the Commissioner on both constitutional claims. First, the district court concluded that a child's substantive due process right to receive psychiatric treatment and care does not attach until DMH/MR has physically confined the child. *Id.* at 673. Second, the district court found that the DMH/MR had a rational basis for its disparate treatment of children over twelve who have been ordered committed. *Id.* at 675. D.W. then perfected this appeal.

II. Issues

A. Whether the DMH/MR violates the substantive due process rights of mentally ill children over twelve who have been ordered committed by placing them on a waiting list for admission to a state facility.

B. Whether the DMH/MR's practice of waitlisting mentally ill children over twelve who have been ordered committed violates the Equal Protection Clause.

III. Standard of Review

We review the district court's grant of summary judgment *de novo,* applying the same standards as the district court. *Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 595 (11th Cir.1997). "Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as

---

[3]Fed.R.Civ.P. 23(b)(2) provides that an action may be maintained as a class action if the four prerequisites set forth in Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Commissioner does not challenge the district court's certification of a plaintiff class in this appeal.

a matter of law." *Harris v. H & W Contracting Co.,* 102 F.3d 516, 518 (11th Cir.1996). In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Id.* at 519.

IV. Discussion

A. SUBSTANTIVE DUE PROCESS CLAIM

D.W., on behalf of himself and others similarly situated, claims that the DMH/MR violated his substantive due process rights by failing to provide him with care and treatment immediately after the juvenile court judge entered an order committing him to the DMH/MR.[4] As a general matter, the Due Process Clause does not obligate states to provide its citizens with substantive services, even if those services are necessary to secure citizens' life, liberty, or property interests. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S.Ct. 2452, 2458-59, 73 L.Ed.2d 28 (1982). However, "[w]hen a person is institutionalized—and wholly dependent on the State—... a duty to provide certain services and care does exist." *Youngberg,* 457 U.S. at 317, 102 S.Ct. at 2459. Although the Supreme Court has not decided the issue, the former Fifth Circuit has held that "a person involuntarily civilly committed to a state mental hospital has a constitutional right to receive such individual treatment as will give him a reasonable opportunity to be cured or to improve his mental condition." *Donaldson v. O'Connor,* 493 F.2d 507, 520 (5th Cir.1974), *vacated on other grounds,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)[5]; *see also Wyatt v. Aderholt,*

---

[4]D.W. does not challenge the care and treatment the DMH/MR provided him *after* his admission to Bryce Hospital.

[5]The Supreme Court decided *O'Connor v. Donaldson* without reaching "the difficult issues of constitutional law dealt with by the Court of Appeals." 422 U.S. at 573, 95 S.Ct. at 2492. Specifically, the Court refused to decide "whether mentally ill persons dangerous to themselves or to others have a right to treatment upon compulsory confinement by the State." *Id.* Seven years later, in *Youngberg v. Romeo,* the Court held that mentally retarded persons who have been involuntarily committed to state institutions have a substantive due process right to "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." 457 U.S. at 319, 102 S.Ct. at 2460. The Court did not resolve the "difficult question" of whether such persons have "some general constitutional right to training *per se,* even when no type or amount of training would lead to freedom." *Id.* at 318, 102 S.Ct. at 2459. Thus, the Court has not decided whether mentally ill or mentally retarded persons confined by the state possess a general right to treatment.

503 F.2d 1305, 1312 (5th Cir.1974). As Judge Wisdom wrote in *Aderholt*, "the only permissible justifications for civil commitment, and for the massive abridgments of constitutionally protected liberties it entails, [are] the danger posed by the individual committed to himself or to others, or the individual's need for treatment and care." *Aderholt*, 503 F.2d at 1312 (explaining holding in *Donaldson v. O'Connor* ). Judge Wisdom further explained that if the purpose of the commitment is to secure treatment, the state violates due process if it does not, in fact, provide treatment. *Id.* Likewise, if the reason for the commitment is the individual's dangerousness, "treatment ha[s] to be provided as the *quid pro quo* society ha[s] to pay as the price of the extra safety it derive[s] from the denial of individuals' liberty." *Id.*

The DMH/MR concedes that once D.W. was admitted at Bryce Hospital, he had a constitutional right to treatment. However, the DMH/MR argues that D.W. had no right to treatment prior to his admission at Bryce. D.W. argues that his right to treatment attached when the juvenile court judge entered the commitment order. Thus, the narrow issue presented in this case is when does the substantive due process right to treatment attach for an individual who is involuntarily civilly committed due to mental illness? This is an issue of first impression in this circuit.[6]

We agree with the district court that the right to treatment "is triggered by the deprivation of physical liberty that generally results from commitment, not from the entry of a commitment order alone." *Poundstone*, 165 F.R.D. at 673. This conclusion follows logically from the basis of the constitutional right to state services of those who are in state custody. The Supreme Court explained that basis in *DeShaney:*

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set out by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

---

[6]Indeed, we could find no authoritative decision from any federal court addressing this issue.

489 U.S. at 199-200, 109 S.Ct. at 1005-06 (citations omitted). The DMH/MR's obligation to treat D.W. arose only because—and therefore only when—it admitted D.W. to Bryce Hospital and restrained his ability to care for himself.

D.W. argues that his right to treatment attached when the juvenile court judge signed the commitment order because the DMH/MR assumed custody of D.W. at that moment pursuant to Alabama law. Alabama law defines "commit" as "transfer legal and physical custody." ALA.CODE § 12-15-1(5) (1995). However, Alabama law does not indicate when commitment begins—at the signing of a commitment order or at the admission of an individual to a state facility. The district court found it unnecessary to reach this issue of state law, *Poundstone,* 165 F.R.D. at 672 n. 5, and so do we. Our recent decision in *Wooten v. Campbell,* 49 F.3d 696 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995), indicates that the state's affirmative obligation to render services to an individual depends not on whether the state has legal custody of that person, but on whether the state has physically confined or restrained the person.

In *Wooten,* a mother brought a substantive due process claim against state and county officials for failing to protect her son, Daniel, who was killed by his father during an unsupervised visitation. The state had legal custody of Daniel at the time of his death, but Daniel lived with his mother. We held that substantive due process rights are not implicated "where a public agency is awarded legal custody of a child, but does not control that child's physical custody except to arrange court-ordered visitation with the non-custodial parent." *Id.* at 699. Citing *DeShaney,* we reasoned that the state was not constitutionally responsible for protecting Daniel because the state had not so restrained or curtailed Daniel's freedom as to prevent Daniel or his mother from caring for him.

> Daniel was in the physical custody of his natural mother when his natural father took him; Daniel did not rely solely upon the state for his physical needs and safety; [his mother] had access to the courts if she was displeased with the unsupervised visitation; [she] could have intervened to stop the unsupervised visitation; and [she] was able to protect Daniel because she had physical custody [of him].

*Id.* at 700. That the state had legal custody of Daniel was not sufficient to create a duty on the part of the state to protect him. Instead, we looked at the reality of Daniel's situation.

In the present case, the DMH/MR did not assume physical custody of D.W. until he was

admitted to Bryce Hospital. After the commitment order was entered, D.W. lived with his mother. The DMH/MR had not so restricted D.W.'s liberty that D.W. and his mother were unable to care for him. Indeed, D.W.'s mother *did* care for him by arranging for his admission to a private facility. D.W. had no substantive due process right to state care and treatment until the DMH/MR physically confined him at Bryce Hospital. Therefore, we affirm the district court's grant of summary judgment in favor of the Commissioner on D.W.'s substantive due process claim.

B. EQUAL PROTECTION CLAIM

D.W. claims that the DMH/MR violates the Equal Protection Clause by placing children over twelve who have been ordered committed on a waiting list for admission to a state hospital. D.W. claims that (1) the DMH/MR admits adults to a state hospital within 24 hours of the entry of a commitment order, and (2) the DMH/MR contracts with private facilities to care for mentally ill children under twelve who need state support. The district court assumed for the purpose of summary judgment that D.W. made out a case of disparate treatment, but ruled that the DMH/MR established a rational basis for its practices. Because the district court thoroughly and correctly analyzed this issue, we will only discuss it briefly.

Rational basis review is the appropriate level of scrutiny because D.W.'s claim involves neither a suspect class nor a fundamental right. *Price v. Tanner,* 855 F.2d 820, 823 (11th Cir.1988). Under rational basis review, the DMH/MR's disparate treatment of children over twelve is constitutional "if any state of facts reasonably may be conceived to justify it." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (*quoting McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). The challenged practices easily pass this test. The DMH/MR showed that it has a rational basis for treating mentally ill children in need of state services differently from adults. Adults who have been ordered committed often require state services immediately because they lack other support structures and could be without care of any kind if placed on a waiting list. Children, by contrast, generally have parents or guardians who can care for them during the waiting period. Additionally, children under the age of 21 who need prompt care may be placed in private facilities at Medicaid expense, but Medicaid

does not cover treatment for adults.

The DMH/MR also demonstrated a rational basis for its disparate treatment of children younger than twelve. These children are rarely committed to the custody of the DMH/MR, and the DMH/MR does not maintain beds at state hospitals for them. Instead, because such children often have multiple needs, the DMH/MR works with other state agencies to develop community services plans for them, which may involve placement in community residential programs or private hospitals at Medicaid expense. The DMH/MR has determined, on the advice of consulting clinicians, that children younger than twelve should not be housed with older children and, preferably, should not be institutionalized in state hospitals at all. Thus, the DMH/MR demonstrated a rational basis for treating mentally ill individuals who need state assistance differently depending upon their ages. Accordingly, we conclude that the district court properly granted the Commissioner summary judgment on D.W.'s equal protection claim.

V. Conclusion

The constitutional right to psychiatric care and treatment is triggered by the state's physical confinement of a mentally ill individual. Thus, the district court properly ruled that the DMH/MR's practice of placing mentally ill children over the age of twelve on a waiting list for admission to a state hospital does not violate due process. Likewise, the district court correctly concluded that this practice does not violate the Equal Protection Clause. For these reasons, we affirm the district court's grant of summary judgment in favor of the Commissioner.

AFFIRMED.